## STUDER v. BLEISTEIN.

*(Supreme Court, General Term, First Department.   May 18, 1888.)*

1. SALE—WARRANTY OF MANUFACTURED ARTICLES—FINDINGS OF REFEREE.

   Defendant contracted to make certain plates for a work on birds, of the best eastern plate-paper; that the colors should be in every detail, in portraying the birds, and in general design and effect, the same as the original plates furnished by plaintiff. *Held*, that a referee's finding that defendant had performed his contract was not supported by further findings that the plates did not portray the birds, in general design and effect, as agreed, and that the paper used was of a cheaper grade, though equal in quality, finish, and fitness for the purposes contemplated in the contract.

2. SAME—OF MANUFACTURED ARTICLES — ACCEPTANCE — RIGHT TO RECOVER FOR OBVIOUS DEFECTS.

   In such case, where the plates proved inferior, but were examined and accepted by plaintiff, the latter cannot recover for a breach of contract, in the absence of any warranty or special agreement that acceptance should not be a satisfaction of the contract.

Appeal from judgment on report of referee.

Action brought by Jacob H. Studer against George Bleistein and another, as executors of the will of C. W. McCune, to recover damages for a breach of contract. Trial before a referee, who reported in favor of the defendant, and from the judgment entered thereon plaintiff appealed.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Austen G. Fox*, for appellant. *Ansley Wilcox*, for respondent.

DANIELS, J. The plaintiff, on the 25th of April, 1881, entered into an agreement with C. W. McCune, the testator, by which the latter agreed to get out an edition of 4,000 of each plate for the plaintiff's work known as "Birds of North America." By the contract it was agreed that the plates should be made of the best eastern plate-paper, equal to a sample furnished by the plaintiff; that the colors should be in every detail, in portraying the birds, and in general design and effect, the same as the original colored plates furnished by the plaintiff; that they should consist of 119 colored plates for each volume of the work, making in all 476,000 plates,—for the price, including the material, of $9,044, payable in cash 30 days after the delivery of the books bound and complete, or in notes at 60 and 90 days, and 4 months, with interest at 6 per cent. per annum. The stones for the plates, with the black drawings, were to be and were furnished by the plaintiff, and were to be stored and returned to him. These plates were to be delivered to the Courier Company, with which the plaintiff had another contract for the printing and binding of the books themselves, and the plates were to be bound with and form a part of these books. It was alleged, in support of the action, that the defendant failed to perform the agreement that he entered into, both in the style and quality of the paper, and the accuracy of the drawings, or printings of the birds, and evidence was given on his behalf tending to establish the truth of these allegations. That was controverted by the defendant; and, as the result of the evidence, the referee found, in general terms, that the testator, Charles W. McCune, had fulfilled and performed his contract in the printing and furnishing of the plates. But this finding was qualified by others, in which the referee stated the fact to be that the paper used in printing the plates was not the best plate-paper; that the best plate-paper was worth about 20 cents a pound in the market, while that which was used was bought for 12 cents a pound, with 4 per cent. discount; and that it was

known as "Calendered Chromo Paper;" but that it was equal in quality, finish, and fitness, for the purpose contemplated by the contract, to the sample referred to in it, and was in fact the best plate-paper for lithographic color printing, and a compliance with the contract.   This last conclusion of the referee was not supported by the facts, inasmuch as the paper used was not the paper described by and mentioned in the agreement; for, where parties enter into an agreement as the plaintiff and the testator did in this instance, the one entitled to performance has the right to insist upon and exact it in compliance with the language and effect of the agreement, and the party to perform has no right to substitute another substance for that agreed to be used, because in his judgment it may be equally as good, or superior to the material mentioned in the agreement.   Both in the description, quality, and weight of the paper, the testator failed to perform his agreement by using such paper for the plates as was mentioned in the contract.

It was further found by the referee that the plates, as they had been printed, were not correct in every detail to portray the birds, in general design and effect, as provided in the contract; that they were not a reproduction of the original sketches furnished by the plaintiff, and not a fair or good reproduction, as that was required by the agreement.   From all these special findings it is evident that there was a failure on the part of the testator to perform the agreement as it had been made with the plaintiff; and, as they are inconsistent with the general statement that the testator had fulfilled and performed his agreement, the special findings, so far as they may be entitled to effect in the review of the judgment, if the case shall depend upon them, will necessarily have to be adopted and followed.

But the referee has further, upon evidence appearing to justify his conclusions, found the facts to be that the plaintiff, after an opportunity and actual examination of the plates, accepted them.   This was stated, in the course of the evidence, to have been done in words in the first instance, and afterwards, and on the 3d of July, 1882, an acceptance of three-fourths of the plates was made in writing.   Under that date the plaintiff wrote to the testator that "the sample prints of the 'Birds of N. A.' for the three thousand edition submitted to me, and compared with the original sketches, are accepted."   And the evidence directly tended to establish the fact that all the plates were printed in the same manner; neither one of the 1,000 editions being specially exceptionable from the others.   When these plates were printed and examined, although defective, as the referee has found them to be, it was entirely within the election of the plaintiff whether he would reject them, and rely upon his action for damages, or whether he would accept them as a substantial performance of the agreement.   Upon full consideration, apparently, he elected to adopt the latter course; and, as the evidence of the witnesses whose testimony was directed to this subject tended to establish the fact, he actually accepted the plates.   This evidence more directly related, in the first instance, to the first 1,000; but afterwards, as the correspondence shows, included the second and third 1,000.   The witness Bleistein, who is one of the executors, testified that Studer examined the plates in the office when Mr. McCune and another person were present, and stated that they were all right, perfectly satisfactory, and well done; that Mr. McCune then asked him to write on all the plates that he had accepted them, to which the plaintiff replied that he did not think that to be necessary; he would trust Mr. McCune to keep the plates together; and wrote on one of the plates his approval or acceptance; that he afterwards informed the witness that the plates were well executed and perfectly satisfactory.   In his cross-examination the same witness stated that the plaintiff said the 119 plates were all right, that he had compared them with the sketches, and that he would accept them.   The witness Meade also testified to a statement of the plaintiff that he had accepted the plates.   And Schindler swore that the plaintiff informed him that he liked the new paper

which was used in printing the plates, but did not like that previously used, as it spoiled the picture; and added that he had no fault to find with the paper, and that this was what was finally supplied for the use and printing of the plates. The plaintiff denied generally having made these statements, but it was for the referee to determine and decide to which of them credit could be the more safely or reasonably accorded; and in his conclusions he reached the result that the evidence on behalf of the defendant was the most reliable, and the best entitled to be followed, relating to these controverted facts. And, as no more than a fair question of fact was presented by this evidence, the court, upon an appeal from the determination of the referee, is not at liberty to disregard his conclusions upon it, but is bound to adopt and follow the conviction reached by him as to what was the truth of the case in this respect. While it is true that the testimony which was given related more directly to the plates used for the first 1,000 of the volumes, and the letter to the others, including the second and third 1,000 of the plates, the referee was still justified in the conclusion adopted by him, that the plaintiff intended, by what had taken place, to accept all the plates as a performance and fulfillment of the agreement. The evidence related to these plates in very general terms, and disclosed no intention on the part of the plaintiff to discriminate or distinguish one portion or set of the plates from another. But while he found four in one instance, and eight in another, to be objectionable, it is still apparent from this testimony, assuming the referee to be right in crediting it, as it was given, on behalf of the defendant, that it was his design and intention to accept all the plates, printed and supplied as they appeared to be, as a performance of the testator's agreement. The evidence was so broad as by reasonable construction to include all the plates printed and furnished by the testator under the agreement. And, after the very general acceptance of the plates was proved in this manner to the satisfaction of the referee, the plaintiff was not at liberty to complain of the defective performance of this agreement, and make that the foundation of a legal action for damages.

It is not necessary to consider or determine whether, in the absence of an actual agreement to accept the plates as they were, the plaintiff might or might not, after their delivery, have maintained an action for damages because of the defective or imperfect execution of the work. If he had merely received them, or they had passed into the books themselves, without any express approval or acceptance, possibly a right of action would have arisen in his behalf for the damages resulting from imperfect workmanship, or the use of a description of material not provided for in the agreement. But whether that be so or not, after the plates had been examined by the plaintiff to his own satisfaction, and he agreed, as the evidence tended to show he did, to accept them as a satisfactory performance of the contract, he, from that time, precluded himself from all claim for damages by reason of the imperfect manner in which the agreement had been performed. He had the right, notwithstanding this fact, to be satisfied with what the testator had done in this respect, and to accept the plates as a fulfillment of the agreement; and, when he had done that, the agreement itself was satisfied, so far as the conduct and acts of the testator had become involved. And after that acceptance the plaintiff was not in a condition to bring or maintain this action against the testator for the recovery of damages for the breach of the agreement. He had taken, on the contrary, what had been done as a full and complete performance, and that satisfied all the obligations of the contract on the part of the testator. This subject was considered in *Dutchess Co.* v. *Harding*, 49 N. Y. 321, where there was a somewhat similar acceptance of the subject of the agreement; and it was held by the court that "the acceptance of the property under such a contract implies a consent or agreement, on the part of the vendor, that the quality is satisfactory, and is conclusive upon him." Id. 323. And in *Mc-Cormick* v. *Sarson*, 45 N. Y. 265, a like acceptance of lumber had taken place,

which the court held to be afterwards a legal answer to an action for damages; and it was added, in the opinion, that, if the purchaser "accepts it after examination, or after an opportunity for examination, as fulfilling the contract, he is bound by such action." Id. 267. And *Canning Co.* v. *Metzger*, 43 Hun. 71, and *Norton* v. *Dreyfuss*, 106 N. Y. 90, 12 N. E. Rep. 428, fully support this rule. In the latter case it was said that "it is now quite well settled that the acceptance by the vendee of articles manufactured for him under an executory contract, after an opportunity to examine them, precludes him from raising any question as to defects or imperfections which were visible, and capable of discovery on inspection, unless there is a warranty of their quality which was intended to survive their acceptance, and give the vendee further time for trial and examination." 106 N. Y. 94, 12 N. E. Rep. 432. The defects complained of in this case were all of this description, and there was no such warranty as is here mentioned; but the action and assent of the plaintiff, as they have been found by the referee, were intended to be final and conclusive as to the quality of the plates. And that it formed a legal defense to this action has the further support of *Monitor Co.* v. *Remington*, 41 Hun, 218; *Cowles* v. *Michel*, 5 N. Y. St. Rep. 427; *Iron Co.* v. *Pope*, 13 N. Y. St. Rep. 480. While, therefore, the performance of the agreement was found by the referee to have been defective, still, as the plaintiff accepted what he had done as a performance of his obligations mentioned in the agreement, the plaintiff was precluded from maintaining this action, after that, for the recovery of damages. On this ground the judgment appears to have been right, and it should be affirmed, with costs.

VAN BRUNT, P. J., and BRADY, J., concurring.