## ZABRISKIE *v.* CENTRAL VERMONT R. CO.

*(Supreme Court, General Term, First Department.* February 11, 1891.)

1. CONSTRUCTION OF CONTRACT.

A firm engaged in mining coal, having furnished defendant railroad company during a year with satisfactory coal, agreed to furnish coal during the following year, "of same quality and kind as furnished you during the past year;" but the coal delivered was found to be of inferior quality. *Held,* that the reference to the coal delivered in the previous year was not a mere description, but was an express stipulation that the coal to be delivered should be of the same good quality, and that if such stipulation was not performed, defendants were liable in damages. Distinguishing *Iron Co.* v. *Pope,* 108 N. Y. 232, 15 N. E. Rep. 335; *Pierson* v. *Crooks,* 115 N. Y. 539, 22 N. E. Rep. 349; *Studer* v. *Bleistein,* 115 N. Y. 316, 22 N. E. Rep. 243.

2. REFEREE'S FINDING—REVIEW ON APPEAL.

Where the proof that the coal is inferior to that called for by the contract, and as to the difference in value, is sufficient to make the question one of fact for the referee, his conclusion thereon will be followed on appeal.

3. ASSIGNMENT FOR BENEFIT OF CREDITORS—LIABILITY OF ASSIGNEE.

After a general assignment by a firm which had contracted to deliver to defendant coal of a certain quality, the assignee continued the delivery of coal without proposing any other agreement. *Held,* that it was to be presumed that the intention was to continue the performance of the contract, and that defendant was not liable to pay therefor otherwise than as agreed; and the price was subject to a counter-claim for damages from the inferior quality of the coal.

4. BREACH OF CONTRACT—DAMAGES.

Under an agreement to furnish coal of a certain quality, a refusal by the purchaser to accept an inferior quality is neither a rescission nor a breach of the contract, and such purchaser is entitled to damages for the increased cost of coal purchased in place of that not delivered.

5. COSTS—EXTRA ALLOWANCE.

The amount claimed in action by plaintiff, with interest, exceeded $7,500; and defendant set up a counter-claim for a larger amount, which was allowed to the extent necessary to extinguish the claim of plaintiff, as the latter sued as assignee. *Held,* that an allowance to defendant, in addition to costs, of $750, was warranted, under Code Civil Proc. N. Y. § 3253, authorizing such an allowance of "a sum not exceeding five per cent. upon the sum recovered or claimed, or the value of the subject-matter involved;" the case being a difficult and extraordinary one, within the meaning of that section.

Appeals from a judgment entered on the report of a referee, and from an order of the special term.

Action by William E. Zabriskie against the Central Vermont Railroad Company. Plaintiff appeals from a judgment for defendant entered on trial before a referee, and from an order granting defendant an allowance in addition to costs. The amount for which judgment was claimed by plaintiff was $6,583.50, with interest, which, computed to the date of the referee's report, would make his claim amount to more than $7,500. Defendant set up a counter-claim for $20,000 damages, and the referee found in his favor for $9,269.36, but, as plaintiff sued on claims assigned to him, no affirmative judgment for the excess was rendered, and the counter-claim was allowed simply as an extinguishment of plaintiff's claim. Code Civil Proc. N. Y. § 3253, provides that "in a difficult and extraordinary case, where a defense has been interposed in any action, the court may also, in its discretion, award to any party * * * a sum not exceeding five per centum upon the sum recovered or claimed, or the value of the subject-matter involved."

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Wilson & Wallis,* (*Hamilton Wallis,* of counsel,) for appellant.     *E. C. James,* for respondent.

DANIELS, J. The plaintiff, as the assignee of Robert Hare Powel & Co., and the Guaranty Trust & Safe Deposit Company of Philadelphia, brought this action to recover the price and value of coal sold and delivered to and used by the defendant. There was no serious dispute concerning the quantity of coal

delivered to and received by the defendant. Much the greater part was delivered by the firm of Powel & Co. in the year 1887, and before the 29th of August of that year, when they made a general assignment to the Guaranty Trust & Safe Deposit Company. After the assignment the assignee continued to send coal to the defendant, which had from time to time objected to the quality of the coal it was receiving. The last was sent and tested in March, 1888, when on account of its quality, and the objections made to it, all further shipments of coal were thereafter discontinued. The firm of Robert Hare Powel & Co. were engaged in the business of mining, selling, and shipping coal, and had been in the year 1886, during which they supplied the defendant with coal, which in its use had proved to be satisfactory in all respects; and on or about the 8th of June, 1887, the following agreement was made between these parties:

"GENTLEMEN: We agree to furnish you during the year ending June 1st, 1888, thirty thousand tons Powelton coal, of same quality and kind as furnished you during the past year, with an option on your part to increase the order to any amount, not exceeding thirty thousand tons; you to control delivery. The coal is to be delivered to you on the cars at Norwood, N. Y., at three dollars ($3.00) per net ton. You are to have an option of five thousand tons, to be delivered you at Rutland during the same season, at $3.90 per gross ton. All above coal to be way-billed as per your directions. Payments to be made for monthly bills in the usual course. You are to give reasonable notice of your requirements, and we are not to be held liable for money damage on account of strikes.

[Signed]                    "ROBERT HARE POWEL & Co.
                    "By E. C. SMITH, 2nd V. P. & Act. Gen'l M.

"*St. Albans, June 8th,* 1887."

And it was under this agreement that all the coal was alleged by the defendant to have been received which was delivered after its date. It was averred on the part of the defendant that the coal delivered after the date of the agreement was defective in quality, and so far inferior to that received from Powel & Co. in 1886 as not to be worth more than two-thirds of the price agreed to be paid by the agreement, and that the assignors of the plaintiff had failed to perform by delivering the quantity of coal mentioned in the agreement, and damages were claimed for these causes, exceeding the amount unpaid for the coal which had been received. As the coal was from time to time received, its inferior quality is stated to have been observed by the persons in charge of that part of the defendant's business, and by the engineers using and consuming it, in the management of their engines; and of these facts repeated information was sent to Powel & Co., who, in substance, replied that the subject would be investigated, and the coal sent forward should be brought up to the standard of the contract; and, when notes constituting payment of the sum of $7,500 were made and delivered, the balance of $3,633.30 was allowed to remain, because of the complaints made of the quality of the coal, and the claim of the defendant for an equivalent abatement in its price. Upon the trial evidence was given on behalf of the defendant, from which the referee could very well find, as he did find and decide, that the facts in this manner alleged, by way of defense and counter-claim, had been proven, and that the damages resulting therefrom to the defendant, together with those sustained in the purchase of other coal necessary for its use, exceeded the amount claimed to be unpaid by the plaintiff, and judgment was directed to be, and it was, entered against him for the costs.

Exception has been taken to the conclusions of the referee, on the ground that the inferior quality of the coal was not maintained by the evidence, and there was for that reason no failure in the performance of the agreement by Powel & Co., or their assignee, and, if there had been, that the defendant had deprived itself of all legal right to complain of the quality of the coal by re-

ceiving and using it after discovering its quality, and that the coal delivered by the assignee of Powel & Co. was not under the contract, but a distinct and separate sale made by themselves, and that damages for the increased cost of coal, bought in place of that not delivered, should not have been allowed. But, as already has been mentioned, the evidence was such as to support the conclusion of the referee that the coal delivered was mostly of a quality inferior to that delivered by Powel & Co. to the defendant in the year 1886. That was an article whose quality had become known, both to Powel & Co. and the persons who had used it in the defendant's employment; and it was that quality of coal that it was expressly agreed should be delivered under and in fulfillment of the agreement made in June, 1887. That coal was referred to and adopted as the standard by which the quality was to be tested. It was not a mere description, which would be waived by the acceptance of an article not conforming to it. But it was an express stipulation that the coal delivered should be of the same good quality as that which had been delivered in 1886; and there could have been but one intention animating that stipulation, and that was that it was to be performed, or compensation made for the failure to perform it. In this respect the case closely resembles that of *Brigg* v. *Hilton*, 99 N. Y. 517. It is true that the sample was there present subject to the inspection of the parties when their agreement was entered into. But that can create no substantial difference between the cases, for it was here equally within the knowledge and recollection of each of these parties; whether it was present and subject to immediate observation, or within the minds of the parties from their preceding transactions, can supply no practical cause for distinction. They were equally apprised, in each instance, of what was known and understood. And when that shall be the fact, and the agreement is based upon what is well known and understood, it must in all reason be considered equally effective. By this agreement Powel & Co. took that degree of responsibility upon themselves that the defendants did in the other case, and expressly incurred the obligation to perform it, and under this authority the use and consumption of the coal did not deprive the defendant of that degree of redress, by way of damages, as would insure to it the value of its contract. The obligation was intended by its terms to be continuous, and remained available for indemnity after these acts of non-performance had all transpired; and to this effect are the cases also of *Norton* v. *Dreyfuss*, 106 N. Y. 90, 12 N. E. Rep. 428, and *Kent* v. *Friedman*, 101 N. Y. 616, 3 N. E. Rep. 905; and that of *Warren* v. *Coal Co.*, 83 Pa. St. 437, confirms this construction of the agreement.

The authorities which have been relied upon to support the appeal depend upon agreements or facts materially differing from the agreement in this action, by which a plain distinction has been indicated. In *Iron Co.* v. *Pope*, 108 N. Y. 232, 15 N. E. Rep. 335, there was no agreement whatever as to quality, but it was for an article of a specified description. That was No. 1 extra foundry pig-iron of the Coplay Iron Company. The terms of sale did entitle the purchasers to iron of that description, but there was no express agreement that what would be delivered should be iron of that quality; and when a different article was delivered it was for the purchasers to elect whether they would accept or reject it; and, as they did accept, they surrendered all claim that the terms of sale had not been complied with, as there was no independent stipulation binding the vendor to the delivery of the quality of iron described. In the case of *Pierson* v. *Crooks*, 115 N. Y. 539, 22 N. E. Rep. 349, the articles were agreed to be sold by a somewhat similar description, containing no direct agreement that they should be of any particular quality, and in that respect broadly differing from the agreement made by Powel & Co. It is true that in the opinion language may be found encroaching in some measure upon the preceding cases sustaining express contracts for quality after the receipt and appropriation of the articles delivered. But no

inference can justly arise out of this circumstance that there was any intention to abridge the principle maintained by these other cases. The case of *Studer* v. *Bleistein*, 115 N. Y. 316, 22 N. E. Rep. 243, proceeded largely upon an actual acceptance of the plates as a satisfactory performance of the agreement. It affirmed the decision reported in 1 N. Y. Supp. 187, and contained in a memorandum in 48 Hun, 620, which is a different case from that mentioned in the reporter's note in the Court of Appeals Reports. These decisions are inapplicable to the present action, and so are those which they have cited and followed; for there was sufficient in this agreement to entitle the defendant's claim for indemnity to be supported by the other authorities, which have been mentioned already. That there was this difference of one dollar a ton between the coal delivered and that delivered in 1886 was reasonably well proved, sufficiently so to make that a question of fact for the referee, whose conclusion as to it must be accepted and followed by this court. *Sherwood* v. *Hauser*, 94 N. Y. 626. The assignee of Powel & Co. was not bound to proceed with the delivery of the coal under the agreement of its assignors. It was entitled to elect whether it would or would not do that. It did continue that delivery without proposing or insisting upon any other agreement than that which was transferred by the assignment; and it is to be presumed from these facts that the intention of the assignee was to continue the performance of their contract. The assignee had no other authority for sending the coal forward, and no other obligation was entered into by the defendant than that which appeared by the written agreement; and under these circumstances it cannot be held that the defendant became liable to pay the assignee for this coal any otherwise than that was provided for by the agreement itself, which was made with Powel & Co. The price, therefore, was equally subject to the counter-claim as the price of the coal was which was delivered previous to the assignment. There was no refusal by the defendant to receive and pay for the quality of coal they were entitled to receive by the agreement; and a refusal to receive any more of the quality of that which was sent was neither a rescission nor a breach of the contract. The defendant was still entitled to its performance, and that was not offered, or to an equivalent amount by way of damages; and, further, to present its right to damages, it was proved that the defendant had purchased a large quantity of coal, equal in quality with that supplied by Powel & Co. in 1886, but for a price with the cost of transportation from Rochester or Charlotte upon the Lake Shore, where it was obtained, to Norwood, where the coal mentioned in the agreement was to be delivered, amounting to $3.59 a ton. This difference, so far as it was necessary for the extinguishment of the plaintiff's demand, was allowed for that purpose by the referee, together with the damages of one dollar a ton on the coal sent by Powel & Co. and their assignee. That this was a proper item of damages seems to be fairly free from doubt; and its allowance, as well as the evidence sustaining it, appears to be within what has already been held in *Wakeman* v. *Manufacturing Co.*, 101 N. Y. 205, 4 N. E. Rep. 264; *Bean* v. *Carleton*, 4 N. Y. Supp. 61; and *Milliken* v. *McLean*, 17 Wkly. Dig. 278.

The case was very carefully considered by the referee, whose opinion contains a very complete examination of the law and the evidence applicable to it; and for the reason assigned by him, as well as those now presented, as there are no other objections entitled to be specially examined, the judgment should be affirmed, with costs. The allowance made of additional costs in the sum of $750 was warranted by the aggregate of the amounts in controversy. The case was difficult and extraordinary, within the significance of that phrase, as it has been employed in section 3253 of the Code of Civil Procedure; and the order for the allowance should be affirmed, with $10 costs only, there being no disbursements on this appeal from that order.

All concur.