THE COPLAY IRON COMPANY (Limited), Respondent, *v.* THOMAS J. POPE et al., Appellants.

Where after discovery of or opportunity to discover any defect in goods delivered under an executory contract of sale, the vendee neither returns or offers to return the property nor gives the vendor notice or opportunity to take it back, in the absence of a collateral warranty or agreement as to quality, he is conclusively presumed to have acquiesced, and may not thereafter complain of inferior quality.

(Argued December 22, 1887; decided January 17, 1888.)

APPEAL from judgment of the Court of Common Pleas in and for the city and county of New York, entered upon an order made April 20, 1885, which affirmed a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover the price of five hundred tons of pig iron sold and delivered by the plaintiff to the defendants.

In their answer, by way of counter-claim, the defendants allege that they are dealers in iron and are not engaged as manufacturers or consumers thereof; that on or about the 8th day of December, 1879, the plaintiff sold and agreed to deliver to them nine hundred tons of No. 1 extra foundry pig iron of the Coplay Iron Company (Limited) make, at the price of $27 per ton; that it agreed to deliver and ship the iron on board the cars at its furnace as and when ordered by the defendants; that they paid it the full price of the iron; that No. 1, extra, was a grade of pig iron of certain well known quality in the market; that they purchased the iron to sell again to their customers which was well known to the plaintiff; that relying upon plaintiff's promise and agreement they sold to E. P. Allis & Co., one of their customers in Milwaukee, five hundred tons of the iron at and for the agreed price of $34 per ton, to be delivered at the furnace of the Coplay Iron Company (Limited), and for which E. P. Allis & Co., fully paid them; that they ordered the plaintiff to ship the iron and thereupon it made a shipment of iron upon the contract which it claimed and pretended

was No. 1 extra iron, which in fact was not No. 1 extra iron, but a grade of iron of inferior quality and of less value than No. 1 extra iron, or the quality it agreed to deliver, and it delivered to them therefor, a bill of lading in which the same was described as No. 1 extra iron; that they sold the iron to their customers as No. 1 extra iron; that they did not examine the iron, and had no opportunity to examine the same; that they relied upon the promise and agreement and bills of lading, and five hundred tons of the iron were forwarded to their customers without examining the same; that on or about the 31st day of July, 1880, as soon as the iron arrived at Milwaukee and they had inspected the same, E. P. Allis & Co. notified these defendants that the five hundred tons of iron sold and delivered by these defendants to them was not No. 1 extra iron, but was of a quality or grade greatly inferior thereto, and entirely unfit for use as No. 1 extra iron, and they refused to accept the iron and demanded of these defendants the return of the purchase-price paid by them therefor, with interest, and the cost of transporting the same from the furnace of the Coplay Iron Company (Limited), to Milwaukee, and storage expenses; that these defendants forthwith duly notified the plaintiff of the inferior quality of the iron, and the claim made by these defendants' customers, and requested plaintiff to examine the iron, and notified it that they would hold it responsible for all damages they might sustain by reason of its failure to deliver the iron required by the contract; that the iron so delivered, or agreed to be delivered by the plaintiff to defendants, was not No. 1 extra iron, but iron of a quality greatly inferior thereto, and not of the standard or quality of No. 1 extra iron, and wholly unsuitable for use in defendants' customers' business, that it was not No. 1 extra Coplay iron; that defendants' customers refused to accept and have not accepted the iron, and it remains subject to the plaintiff's order, and these defendants have not accepted the same; that defendants have sustained damages by reason of the inferior quality of the iron

and the breach of the plaintiff's agreement as to the quality thereof, and its refusal to deliver the iron purchased of it, and of its refusal to return the money so received, defendants demanded that the complaint be dismissed, and that they have judgment for the amount of their damages.

The case was brought to trial and a jury was impaneled to try the same. Counsel for the plaintiff then moved the court for judgment upon the grounds, "first, that there is no defense set up to the cause of action set forth in the complaint; second, that the facts set up by way of counter-claim, are not only not sufficient to constitute a cause of action, but show affirmatively that there is no liability whatever on the part of this plaintiff to the defendants." The defendants conceded that the plaintiff's claim set forth in its complaint, was admitted by the answer, and they then offered to prove the counter-claim set up in the answer. Plaintiff's counsel admitted for the purposes of his motion that all the allegations in the answer were proved. The court thereupon directed a verdict for the plaintiff to which direction defendant's counsel excepted.

*W. W. Niles* for appellants. Where it is admitted that the party had no opportunity to examine the goods, he is excused from making any examination or offer to return, and it is not for a court to speculate as to what was the ground of his inability. (*Doane* v. *Dunham* (79 Ills. 131.) A representation at an auction sale, or if in a bill of sale describing an article by a specific name known in the market is a warranty that the article is such as is described. (*Hawkins* v. *Pemberton,* 51 N. Y. 198; *White* v. *Miller,* 71 id. 118; *Van Wyck* v. *Allen,* 69 id. 61; *Henshaw* v. *Robins,* 9 Metc. 83; *Hastings* v. *Lovering,* 2 Pick. 214; *Yates* v. *Pym,* 5 Taunt. 446; *Osgood* v. *Lewis,* 2 H. & G. [Md.] 495; *Poulton* v. *Lattimore,* 9 B. & C. 259; *Richmond Trading Conpany* v. *Farquar,* 8 Black. 89.) In a sale by description, there is an implied warranty that the goods are merchantable under that denomination, and a contract to sell "No. 1 extra foundry iron," should give an article merchantable under that description. (1 Parsons on

Contracts, 464; Benjamin on Sales, 539, 540, 541; *Gardiner*
v. *Gray*, 4 Camp. 144; *Jones* v. *Clark*, 3 Q. B. 197; *Bowler*
v. *Shand*, 21 App. Cas. L. R. H. of L. 473.)

*Charles B. Alexander* and *George A. Strong* for respondent.
The vendee in an executory contract for the sale of mer-
chandise cannot retain inferior goods and sue for damages.
He must reject and return, or offer to return them. (*Hargous*
v. *Stone*, 5 N. Y. 86, 87; *Reed* v. *Randall*, 29 id. 361;
*McCormick* v. *Sarson*, 45 id. 267; *Beck* v. *Sheldon*, 48 id.
373; *Dutchess Co.* v. *Harding*, 49 id. 323; *Gaylord, etc., Co.*
v. *Allen*, 53 id. 519: *Pomeroy* v. *Shaw*, 2 Daly, 269; 49 N.
Y. 324.) An express warranty may be an element in either
a present or an executory sale, and where it is proved in either
the same result follows. (*Muller* v. *Eno*, 14 N. Y. 597;
*Rust* v. *Eckler*, 41 id. 488; *Foot* v. *Bentley*, 44 id. 166;
*Hawkins* v. *Pemberton*, 51 id. 198, *Dounce* v. *Dow*, 64 id.
411; *Van Wyck* v. *Allen*, 69 id. 61; *White* v. *Miller*, 71 id.
118; *Day* v. *Pool*, 52 id. 416; *Parks* v. *Morris Ax Co.*, 54
id. 586; *Dounce* v. *Dow*, 57 id. 16; *Brigg* v. *Hilton*, 99 id.
525; *Kent* v. *Friedman*, 101 id. 616; 29 id. 362; *Dutchess
Co.* v. *Harding*, 49 id. 323.)

EARL, J. We must assume that the sale of iron alleged in
the defendants' counter-claim was an executory sale, as that is
the fair and just inference from the facts alleged. The plaintiff
was a manufacturer of iron, and the contract of sale was made
on the 8th day of December, 1879. It covered ·nine hundred
tons of iron, and it was to be delivered in the future as and when
the defendants ordered it to make delivery. There is no allega-
tion that the plaintiff at the time of this sale had the identical
nine hundred tons of iron on hand, or that that quantity was
separated from other iron. It would be against all experience,
and certainly against the usual course of business, to suppose
that the manufacturer had the iron on hand, and that upon its
purchase by the defendants, it was separated and set apart and
stored for them. It is reasonable to suppose, and as all the

·facts were submitted to the court, neither party asking to have them submitted to the jury, the court had the right to draw the inference that the iron was to be thereafter manufactured, weighed, designated and delivered; and thus this was an executory contract of sale. In such a case the fact of payment has very little significance. It is sometimes a controlling fact to show that the sale was not executory and was completely executed. It is always evidence upon that question, but in a case like this is not important. The price of property purchased may be paid, and yet the contract of sale in every sense be executory. Treating this then as an executory contract of sale, the defendants are not in a position to complain of the quality of the iron, because they never offered to return it, and never gave the plaintiff notice or opportunity to take it back. They must therefore be conclusively presumed to have acquiesced in the quality of the iron. (*Hargous* v. *Stone,* 5 N. Y. 73; *Reed* v. *Randall,* 29 id. 358; *McCormick* v. *Sarson,* 45 id. 265; *Dutchess Co.* v. *Harding,* 49 id. 323; *Gaylord Mf'g Co.* v. *Allen,* 53 id. 515.) Here there was no collateral warranty or agreement as to the quality of the iron. The representation as to the kind and quality of iron was part of the contract of sale itself, descriptive simply of the article to be delivered in the future; and clearly within the cases cited an acceptance of the property by the defendants, without any offer to return the same at any time, deprives them of any right to make complaint of its inferior quality.

The judgment should be affirmed, with costs.

All concur except Andrews J., not voting.

Judgment affirmed.