## WALLACE *et al.* v. BLAKE *et al.*

(*City Court of New York, General Term.* September 29, 1888.)

1. SALE—ACTION FOR PRICE—DEFENSES—DEFECTIVE QUALITY.

Defendants directed plaintiffs to make for them, at their mills in England, 500 pounds of yarn, described only as "No. 260," no stipulation as to quality being made. Upon its receipt defendants opened and paid for it, and sent the greater part to a customer, who attempted to manufacture it, but, claiming it to be unmerchantable, demanded a repayment of part of his money, which defendants made. Before the receipt of the goods defendants ordered 1,000 pounds more, but, before the goods were entirely manufactured, cabled plaintiffs not to ship until further orders; but without further orders, after a delay of five weeks, plaintiffs shipped them, but defendants refused to receive or examine the goods, and they were reshipped. *Held*, that there was no evidence of a warranty, either express or implied, to be submitted to the jury, and that, not having returned the first shipment nor examined the second, they could not allege the inferiority of either.

2. SAME.

Plaintiffs, having fully performed their agreement to manufacture and ship the goods, and defendants having no legal ground for refusing to receive them, can recover the full contract price.

3. SAME—EVIDENCE—DEFECTS IN FORMER SHIPMENTS.

Proof of the inferiority of the first goods would be irrelevant as to the quality of the second shipment.

**4. SAME—SET-OFF AND COUNTER-CLAIM.**

    Nor could defendants recover the amount they paid their customer for the inferiority of the first shipment, as, in the absence of any warranty, it was their duty to return the goods or pay the full price, and the testimony of the purchaser that defendants paid him for the defect in the goods was properly excluded.

    PITSHKE, J., dissenting.

    Appeal from trial term.

    The complaint alleged that the plaintiffs were manufacturers of worsted yarns, under the firm name of Wallace & Co., near Bradford, in Yorkshire, England. That about the 20th of June, 1886, the defendants, Frederick D. Blake and others, requested the plaintiffs' firm to manufacture for defendants 500 pounds of yarn, known as No. 260, at an agreed price of 29d. sterling per pound. That on or about the 30th day of June the defendants requested plaintiffs' firm to manufacture for said defendants the further amount of 500 pounds of said yarn, known as No. 260, at the same price, and also to duplicate said order of June 30th two weeks later. That by the further terms of the agreement between the plaintiffs and the defendants the defendants undertook to pay the reasonable charge for packing said yarn in bale and the consular fees and commission fees paid by plaintiffs for the export of said yarn from England. That plaintiffs promptly proceeded to and did manufacture for the defendants all the aforesaid yarn. That there had been several dealings between the plaintiffs and defendants prior to the transactions therein set forth, by which the plaintiffs had manufactured for and sold and delivered to the defendants yarns of plaintiffs' manufacture, and such several prior deliveries were made by delivering to common carriers at Liverpool, England, to-wit, ocean steamship companies, and shipping such deliveries to defendants at New York, and forwarding said defendants the respective invoices and shipping documents by mail. That, pursuant to the course of dealing described in the foregoing clause of the complaint, the plaintiffs delivered to the defendants, in or about the month of July, 1886, the yarn ordered on June 20, 1886, by delivering the same to a common carrier at Liverpool, England, shipped to defendants at New York, and plaintiffs forwarded to defendants the invoice and shipping documents relating thereto by mail; and on or about August 13, 1886, plaintiffs delivered to defendants the 1,000 pounds of yarn ordered by defendants on June 30th, by delivering them to a common carrier at Liverpool, England, for transportation to New York, shipped to defendants at New York, and defendants received the invoice and shipping documents relating thereto. That on or about the 8th day of July, 1886, the plaintiffs requested defendants to delay shipping the 1,000 pounds of yarn until defendants should further instruct them. That defendants failed to request or instruct them to ship the 1,000 pounds of yarn after July 8, 1886. That defendant's paid for the 500 pounds of yarn ordered June 20, 1886, and paid the charges for packing the same in bale and the consular and commissioner's charges thereon, but have not paid for the 1,000 pounds of yarn, nor the similar charges thereon, amounting in all to $594.74, money of the United States. The answer denies knowledge or information of plaintiffs' copartnership; admits that defendants are copartners, and that in the summer of 1886 they requested plaintiffs to manufacture for them 1,000 pounds of yarn, the same to be of sound and merchantable quality, properly packed; denies that said yarn was ever delivered to or accepted by the defendants, or that they had ever accepted or designated the ocean steamship companies, or their agents, to accept said yarn; alleges on information and belief that said yarn was unsound and unmerchantable, and unfit for use, and not according to said order. The answer then sets up a counter-claim arising out of the sale of the order of June 20th of 500 pounds, by reason of the unsoundness thereof, claiming $200 damages. There are no other denials, and the allegations of the complaint not denied necessarily stand admitted. The first lot of 500

pounds were sold by defendants to one Thomas Kitson, of Pennsylvania. The 1,000 pounds were returned to the plaintiffs. On the trial a verdict was directed for the plaintiffs, to which defendants excepted, and from a judgment on the verdict, and an order denying motion for new trial, defendants appeal.

Argued before NEHRBAS, McGOWN, and PITSHKE, JJ.

Wm. C. Beecher, for appellants. Carlisle Norwood, Jr., for respondents.

NEHRBAS, J., (after stating the facts.) The question of plaintiffs' co-partnership is not seriously contested, as defendants make no mention thereof in their brief. It is, in my opinion, practically admitted by the allegations contained in the answer, in which they speak of their dealings with the plaintiffs. The motion made to dismiss the complaint when the plaintiffs rested was properly denied. The goods had been manufactured at defendants' request, and they could not, by declining to receive them, deprive the plaintiffs from recovering the contract price. At the close of the case the motion to dismiss was renewed, and defendants' counsel asked leave to go to the jury upon the question as to whether the goods were shipped under an implied warranty under the contract to manufacture; also upon the counter-claim of a breach of the implied warranty. These motions were severally denied, under exception.

This was an executory contract of sale, to manufacture a certain article not theretofore in existence. No warranty of quality was given at any time. The goods ordered were a certain number of pounds of yarn, known as No. 260, —merely descriptive,—designating the article desired. Five hundred pounds of this yarn were shipped to, received, and paid for by the defendants. These goods were never returned or offered to be returned to the plaintiffs, and, there having been no collateral warranty or agreement as to quality, the defendants are conclusively presumed to have acquiesced, and may not thereafter complain of inferior quality. Iron Co. v. Pope, 108 N. Y. 232, 15 N. E. Rep. 335. Nor was there any warranty of quality as to the 1,000 pounds ordered, shipment whereof was interdicted by the defendants. They were nevertheless sent to New York, but were reshipped by the defendants to England, not having been opened or examined by them. They relied upon their proof of the inferiority of the 500 pounds to show that the 1,000 pounds were probably of the same quality. But, as the proof of inferiority, if any existed, in the yarn delivered and paid for, could not be established on the trial, because no warranty was proven, and it being beyond the power of the defendants to return the goods, there is nothing before us from which we might conclude that the 1,000 pounds returned unexamined were inferior, and not exactly as ordered, to-wit, yarn No. 260,—a proper merchantable article. For this reason there was nothing to be submitted to the jury upon the question of warranty, express or implied. The counter-claim of the defendants is inadmissible. The 500 pounds were received at defendants' store, where they removed 20 or 30 pounds from the bale in which the yarn was packed, and forwarded the balance to a Mr. Kitson, to whom they had sold the 500 pounds. Mr. Kitson had the yarn dyed, and attempted to manufacture it into cloth. He asked for and was allowed by defendants $180 to $200 by reason of the condition of the yarn. This is the basis of defendants' counter-claim. By the decision in Iron Co. v. Pope, supra, it is manifest that unless there be a warranty as to quality the vendee cannot retain the goods and recoup any damage he may have suffered by reason of unsoundness or inferiority as against the price agreed to be paid. The goods must be returned or paid for. A different rule applies where a warranty of quality was given. In such a case the purchaser may either return the goods and rescind the contract, or retain them and recover any loss he may have sustained by the breach of the warranty. Norton v. Dreyfuss, 106 N. Y. 90, 12 N. E. Rep. 428; Brigg v. Hilton, 99 N. Y. 517, 3 N. E. Rep. 51. So, also, if the goods are to be used for a specific purpose,

if that purpose be communicated to the manufacturer, a warranty to that extent will be implied. In this case the evidence discloses that the defendants could have ascertained any defects in the yarn if they had examined it in this city before forwarding it to their vendee in Philadelphia. But they neglected to do so, and relied upon the examination to be made by Mr. Kitson, to whom they had sold the yarn. The allowance made by the defendants to Mr. Kitson is therefore not a proper subject of counter-claim as against the plaintiffs.

The exceptions taken to the exclusion of the testimony of Mr. Kitson concerning his examination of the yarn after the sale to him, and its condition upon his receipt thereof, and after the same had been dyed, are equally untenable. For that became immaterial after the defendants had put it out of their power to return the goods to the plaintiffs. Nor was it competent to show, by analogy, that the 1,000 pounds returned to plaintiffs unexamined, were not what had been contracted for. While the 500 pounds may have been inferior, that of itself would be no proof that the 1,000 pounds were equally bad. The questions were consequently properly excluded.

The form of the action is assailed. It is conceded that this is not an executed contract of sale and delivery. It is an agreement to manufacture, and therefore executory in its nature. *Parsons* v. *Loucks*, 48 N. Y. 17; *Cooke* v. *Millard*, 65 N. Y. 352. The plaintiffs, before they can recover from the defendants, must show that they have performed everything that is to be done on their part to complete the sale and transfer the ownership of the thing sold to the purchasers, and place it at their disposal, so far, at least, as to enable the latter to obtain possession of it, and deal with it as they may think fit, on payment or tender of the price. 2 Add. Cont. 946; *Smith* v. *Chance*, 2 Barn. & Ald. 753. All this has been accomplished by the plaintiffs. The yarn was manufactured, and was not shipped immediately, because of the defendants' cablegram not to ship until further notice. It was held five weeks, and then delivered to a common carrier at Liverpool, as all the previous shipments had been made, and the invoice and shipping documents mailed to the defendants. Nothing more remained for plaintiffs to do. And, no legal ground appearing for the non-acceptance of the goods by the defendants, the plaintiffs were entitled to recover the contract price. In *Butler* v. *Butler*, 77 N. Y. 472, the plaintiff had not fully performed his agreement, and in that case it was properly held that he could not recover on the contract, but must sue for its breach. Here the contract was performed, and the defendants cannot elude payment by simply declining to receive and accept the goods manufactured. The judgment and order appealed from should, therefore, be severally affirmed, with costs.

McGOWN, J., concurs.

PITSHKE, J., (*dissenting*.) This action was brought by plaintiffs, as manufacturers in England, to recover the "price" of a lot of 1,000 pounds of certain woolen yarn, known as No. 260, spun by plaintiffs under an order from defendants, and the answer averred the same was not received and never accepted by the defendants. There was also a counter-claim on a previous lot of 500 pounds, paid for and resold by defendants, which was of a poor condition as delivered, whereby defendants suffered a loss. Before the second lot had been entirely manufactured and finished the defendants cabled to plaintiffs, previous to any shipment thereof, a "countermand," i. e., "await further cable before shipping last 1,000 pounds ordered." Prior to the shipment, plaintiffs also received a letter from defendants, to the same purport as the telegram. This countermand was not subsequently recalled. Notwithstanding, the plaintiffs afterwards shipped said second lot of 1,000 pounds, which on its arrival here the defendants refused to take, and they did not examine it, as that would have necessitated their paying out the high duty thereon. Such 1,000 pounds

were then shipped back to plaintiffs, on the latter's account. On the trial the court denied the defendant's application to go to the jury, on the whole matter under the implied warranty of the contract to manufacture such yarn, as well as upon the said counter-claim, and also their motion, at the close of the whole case, to dismiss the complaint, on the ground that "delivery" had been distinctly forbidden before shipment of any of the 1,000-pounds lot, to which denial the defendants duly excepted.

The complaint made the transactions an arrangement to "manufacture for" defendants articles (not yet in use) of a certain sort prescribed. This is not a sale *in præsenti*, within the statute of frauds, but an agreement to do work and supply the material thereto. *Parsons* v. *Loucks*, 48 N. Y. 17; *Deal* v. *Maxwell*, 51 N. Y. 652. In such cases there exists an implied warranty that the articles will be free from any latent defect growing out of the process of manufacture, and the rule of "*caveat venditor*" governs in respect thereof; but as to latent defects in the "materials" used, proof or direct inference of the manufacturer's knowledge of such latter must be affirmatively shown on the vendee's part. *Hoe* v. *Sanborn*, 21 N. Y. 552, approved in *Bridge Co.* v. *Hamilton*, 110 U. S. 114, 3 Sup. Ct. Rep. 537; *Howard* v. *Hoey*, 23 Wend. 350. However, a warranty of "fitness" of the ordered chattels for any special, known, or supposed use or purpose is not implied, but the same must be particularly bargained for. *Bartlett* v. *Hoppock*, 34 N. Y. 118. The title to the respective articles, of course, remains in such manufacturer until the legal "delivery" and approval of the finished article. *Kein* v. *Tupper*, 52 N. Y. 550, 553, 555; *Tompkins* v. *Dudley*, 25 N. Y. 273, 274. Meanwhile no action lies for the contract price. 52 N. Y. 555. As regards the "counter-claim," there was no proof offered, however, that the first lot as delivered was not made equal to the "sample," No. 260; and such counter-claim was properly disregarded by the court, as unproven. *Beck* v. *Sheldon*, 48 N. Y. 365. But as to the second lot of yarn. Before any thereof had been shipped the purchasers duly stopped all further "shipping" of any more goods until further instructions from them. This also appears directly admitted on the face of the complaint. Hence the contract price and charges for shipment were thereafter not recoverable, as such stoppage of further performance was never revoked, (*Smith* v. *Brady*, 17 N. Y. 174, 188; *Husted* v. *Craig*, 36 N. Y. 221;) and consequently the only remedy of the manufacturer was a suit, not upon and in pursuance of the contract, but for the manufacturer's "damages" sustained by reason of the vendee's breach of the contract, through the loss of profits and other attendant injury. *Messmore* v. *Shot Co.*, 40 N. Y. 427. For, when stopped, the manufacturer could legally go no further. *Goodwin* v. *Kirker*, 2 Hilt. 401. The price cannot be recovered, as the "contract price" is not divisible, and the whole agreement was not "performed" when further shipment was forbidden; and, as the yarn on hand or finished could not, thereafter, be rightfully sent off to the place of destination, it remained the manufacturer's property, and if lost or destroyed he must bear the loss himself. Such stoppage has not been recalled. See *Butler* v. *Butler*, 77 N. Y. 472, 475, and authorities cited. The rule is laid down: "No title vests in him for whom a chattel is to be manufactured till it is finished and properly delivered and approved, or sufficiently submitted for approval." *Andrews* v. *Durant*, 11 N. Y. 35, 40, 45. To same effect, *Atkinson* v. *Bell*, 8 Barn. & C. 277; *Merritt* v. *Johnson*, 7 Johns. 473. And, therefore, no action for the "price" accrues until then. *Kein* v. *Tupper*, 52 N. Y. 555. And this is so, although the manufacture (in Europe) of the whole goods was not countermanded, but only their shipment was stopped. The like principles must here apply. The contract sued on, providing for a delivery at a distant point from Europe, was "ambulatory," until appropriate delivery of the articles ordered. *Evans* v. *Harris*, 19 Barb. 417, 427, 428. The case on such rejected goods, as made out by the pleadings and the evidence, was solely one of a "refusal to accept goods"

manufactured to order, and in such cases, ordinarily, the measure of damages, at most, is the difference between the market value of the goods at the time of the breach of contract and the price at which they were ordered; and a notice to accept was a necessary prerequisite to be given unto the vendee herein, and the refused merchandise as manufactured might have been sold at auction, with a view of getting at such market value. *Bigelow* v. *Legg*, 102 N. Y. 652, 653, 6 N. E. Rep. 107; *Myers* v. *De Mier*, 52 N. Y. 647, 648; *Messmore* v. *Shot Co.*, 40 N. Y. 422, 427; *Beebe* v. *Dowd*, 22 Barb. 255. No notice to defendant of such auction sale would be required. *Messmore* v. *Shot Co.*, 40 N. Y. 422.

Furthermore, after the notice to "stop" all shipping until otherwise directed, the manufacturer could not throw upon the vendee any charge or expense for or toward shipment or transportation of any of the articles, although impliedly permitted to "finish" their "manufacture." *Dillon* v. *Anderson*, 43 N. Y. 239, 240; *Hamilton* v. *McPherson*, 28 N. Y. 72. For no tender was necessary. *Lawrence* v. *Miller*, 86 N. Y. 132, 137; *Blewett* v. *Baker*, 58 N. Y. 611. The verdict is, therefore, erroneous, and the error is the result of a direction by the court. The cases of *Iron Co.* v. *Pope*, 108 N. Y. 232, 15 N. E. Rep. 335, and *Norton* v. *Dreyfuss*, 106 N. Y. 90, 12 N. E. Rep. 428, do not apply herein, because the merchandise sent over was not at all retained, as its transmission from Europe had been countermanded, while the contract was still "executory" and before any "shipping" took place. See 48 N. Y. 366. The action was brought and tried on a wrong theory of a claim of the "price" as on an executed agreement, instead of suing for the plaintiffs' "damages" arisen from the continued rejection of the goods ordered and manufactured, and the proofs were utterly insufficient to allow a recovery on the latter theory; and, therefore, I am for reversal of the judgment appealed from. Finally, the question, as regards the intended rejection or acceptance of the goods on the facts adduced, was a matter entirely for the jury. There should, for the reasons stated, be a new trial.