WILLIAM E. ZABRISKIE, Appellant, *v.* THE CENTRAL VERMONT
RAILROAD COMPANY, Respondent.

A contract of sale of goods, which points out a known and ascertainable
standard by which to judge the quality of goods sold, is, for all prac-
tical purposes, a sale by sample.

Upon a sale by sample, with warranty that the goods shall correspond
with the sample, the vendee is not precluded from claiming and recover-
ing damages for breach of warranty, although he has accepted the goods
after an opportunity for inspection.

*Coplay Iron Co.* v. *Pope* (108 N. Y. 232); *Studer* v. *Bleistein* (115 id. 316);
*Pierson* v. *Crooks* (Id. 539), distinguished.

*It seems* that where no warranty attended a sale, and the quality of the
goods might have been discovered on inspection, and where, after full
opportunity for inspection, they have been accepted by the vendee, he
is precluded from recovering damages for any variation between the
goods delivered and those described in the contract of sale.

In an action to recover the contract price of a quantity of coal, the follow-
ing facts appeared: The contract called for the delivery during the year
of 30,000 tons of "Powelton coal of the same quality and kind as fur-
nished" by the vendor to the vendee the preceding year. The vendors,
after delivery of 4,000 tons, assigned the contract; the assignee delivered
500 tons more, when further deliveries were stopped by the absolute
refusal of defendant to receive any more coal of the kind already deliv-
ered, which was of much inferior quality to that furnished the preceding
year; this was not discernable on inspection. Immediately after defend-
ant had had an opportunity to test the first delivery and until the deliv-
eries ceased altogether, it constantly complained of the quality, but was
induced to continue to receive and test the coal by representations and
promises made by the vendors that the quality should be improved, and
upon trial the coal would be found to be satisfactory. *Held*, that the
sale was by sample, and the standard selected for testing the quality of
the coal was sufficiently definite and precise; that the contract contained
a warranty of quality which survived acceptance of the coal; but that
even if the sale had been without warranty, as the defects were not dis-
cernable upon inspection simply, but only upon using the coal, defend-
ant was not precluded from claiming damages.

Also *held*, that as the continued delivery, after assignment of the contract
by the vendor's assignee, was under and in performance of the con-
tract, defendant was entitled to counter-claim the damages, because of the
inferiority of the coal, against the price of that delivered by the assignee.

(Argued December 2, 1891; decided February 2, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 14, 1891, which affirmed a judgment in favor of defendant, entered upon the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*Hamilton Wallis* for appellant. There was no warranty of the quality of the coal which Robert Hare Powell & Company had, by their contract, agreed to deliver. (*C. I. Co.* v. *Pope*, 108 N. Y. 232; *Pierson* v. *Crooks*, 115 id. 540; *Beirne* v. *Dord*, 5 id. 99; *Lothrop* v. *Otis*, 7 Allen, 435; *Parker* v. *Palmer*, 4 B. & Ald. 387; *Hargous* v. *Stone*, 5 N. Y. 91.) The coal delivered under the contract having been accepted and used by the defendant, after a full opportunity to inspect it before acceptance, the defendant cannot claim that it did not fulfill the description in the contract. (*Pierson* v. *Crooks*, 115 N. Y. 546; *Studer* v. *Bleistein*, Id. 334; *C. I. Co.* v. *Pope*, 108 id. 236; *Norton* v. *Dreyfuss*, 106 id. 94; *Dounce* v. *Dow*, 64 id. 411; *F., etc., Co.* v. *Metzger*, 118 id. 260; *Bernard* v. *Kellogg*, 10 Wall. 383; *Bartlett* v. *Hoppock*, 34 N. Y. 122.) But if the contract in question can be held to contain a warranty, still the plaintiff was entitled to recover. (*Studer* v. *Bleistein*, 115 N. Y. 324.) The court erred in not allowing to plaintiff the full price for coal to which defendant made no objection. (*Bogardus* v. *N. Y. L. Ins. Co.*, 101 N. Y. 335.) No damages were proven which could be set off against the plaintiff's claim. (*Skinner* v. *White*, 17 Johns. 364; *Dillon* v. *Anderson*, 43 N. Y. 231; *Francis* v. *N. Y. & B. E. R. R. Co.*, 108 id. 98; *Catlin* v. *Tobias*, 26 id. 222; *Lennon* v. *Smith*, 124 id. 578.) Damages cannot be set off against the price of the coal shipped by the Guaranty, Trust and Safe Deposit Company. (*Mandeville* v. *Reed*, 13 Abb. Pr. 179.)

*Edward C. James* for respondent. The words, "Powelton coal of the same quality and kind as furnished you during the past year," as used in this contract, are not mere words of

description and could not have been so intended; they constitute an express warranty of kind and quality. (*Muller* v. *Eno*, 14 N. Y. 597; *Hawkins* v. *Pemberton*, 51 id. 198; *Day* v. *Pool*, 52 id. 416; *Dounce* v. *Dow*, 57 id. 16; 64 id. 411; *Gurney* v. *R. R. Co.*, 58 id. 358; *Brigg* v. *Hilton*, 99 id. 616; *Kent* v. *Friedman*, 101 id. 616; *McIntosh* v. *Hawley*, 13 N. Y. S. R. 434; *Dike* v. *Reitlinger*, 23 Hun, 241; *Warren* v. *P. C. Co.*, 83 Penn. St. 437.) The right to damages was not waived. (*Day* v. *Pool*, 52 N. Y. 416; *Birdseye* v. *Frost*, 34 Barb. 367; *D. Co.* v. *Harding*, 49 N. Y. 321; *Parks* v. *Axe Co.*, 54 id. 586; *Gurney* v. *R. R. Co.*, 58 id. 358; *Brigg* v. *Hilton*, 99 id. 525; *Kent* v. *Friedman*, 101 id. 616; *F. C. Co.* v. *Metzger*, 118 id. 260.) The damages of $4,574.86 for the failure of the plaintiff's assignors to perform this contract were properly allowed as an offset to extinguish the balance of plaintiff's claim. (Code Civ. Pro. § 502; *Parsons* v. *Sutton*, 66 N. Y. 92; *Wright* v. *Bank*, 110 id. 237; *Messmore* v. *N. Y. S. Co.*, 40 id. 427; *Gregory* v. *McDowell*, 8 Wend. 435; *Darst* v. *Burton*, 47 N. Y. 175; *Cohen* v. *Platt*, 69 id. 351; *G. T. Co.* v. *Phillip*, 23 Wall. 471.) Under the facts proved and found in the case, the defendant's damages are allowable as a counter-claim against the price of the coal shipped after the assignment, as well as before. (*Patton* v. *R. B. P. Co.*, 114 N. Y. 1.) The order of the General Term affirming the order granting the defendant an additional allowance should be affirmed. (*Vasseur* v. *Livingstone*, 13 N. Y. 248; Code Civ. Pro. § 502; *Wilman* v. *Schall*, 61 N. Y. 564, 570; *R. Co.* v. *C. Co.*, 62 How. Pr. 180; *Barclay* v. *Culver*, 66 id. 342; *Clegg* v. *Aikens*, 17 Abb. [N. C.] 88; *Bord* v. *R. R. Co.*, 14 id. 496.)

*Per Curiam.* After the argument of this case and consultation thereon, the judges concluded that the judgment should be affirmed, and Chief Judge RUGER was selected to write the opinion of the court. He entered upon that duty, and before he had fully completed his opinion he was stricken down with the disease which soon terminated in his death.

He had written enough to justify the affirmance of the judg-
ment, and we now adopt his opinion as the opinion of the
court.   That opinion and the able and elaborate opinions deliv-
ered by the referee and at the General Term fully answer the
argument now made on behalf of the appellant, and it would
be a useless task to write more.   The opinion is as follows :

"RUGER, Ch. J.   This action was brought by the plaintiff
to recover the contract price of a certain quantity of coal sold
and delivered by Robert Hare Powell & Co. and their assignee,
the Guarantee Trust and Safe Deposit Company, to the
defendant after June, 1887, and which claim was assigned by
the vendors to the plaintiff.

" This coal was furnished by the vendors to the defendant
under a written contract made June 8, 1887, between Powell
& Co. and the defendant, whereby the said vendors agreed to
sell and deliver to the defendant, during the year ending June
1, 1888, at Norwood, N. Y., 30,000 tons of ' Powelton coal, of
same quality and kind as furnished you during the past year,'
at $3 per net ton.

" The same vendors had furnished the defendant a quantity
of Powelton coal the previous year which had been approved
as satisfactory by the defendant.   Under the contract of 1887
Powell and Co. had, previous to August 29, 1887, delivered
to the defendant on its contract, upwards of four thousand
tons of coal, and on that day they assigned their contract to
the Guarantee Trust and Safe Deposit Company, who con-
tinued delivering coal until they were stopped by the absolute
refusal of the defendant to receive any more coal from them
of the kind already delivered.   The assignee of the contract
had, up to this time, delivered about five hundred tons, leaving
some twenty-five thousand tons yet undelivered to complete
the performance of the contract.

" Immediately after the defendant had had an opportunity
to test the first delivery of coal, and until it ceased altogether, it
uniformly and constantly complained of the quality of the coal
delivered to it, and objected that it did not correspond, either
in quality or kind, with the coal delivered to the company in

the year 1886. The defendant, however, was induced to continue to receive and to test the coal actually delivered by the representations and promises made by the plaintiff's assignors that the quality of the coal thereafter delivered should be improved, and that upon trial it would be found to work more satisfactorily. Various interviews took place between the agents of the defendant and the plaintiff's assignors, and several examinations were made by them after the coal was delivered and in possession of defendant, and the vendors uniformly promised to improve the quality of the coal delivered, and predicted that the future deliveries would, upon actual experiment, prove to conform to the quality of the coal described in the contract, and that compensation for the damages caused by the inferior quality of the coal already delivered, should be adjusted.

"It was found by the referee that practically all of the coal delivered under the contract was greatly inferior to that furnished in the year 1886. It is clearly inferable from the findings of the referee, as well as the evidence, that the great bulk of the coal was received by the defendant at the earnest solicitation of the vendors and for the purpose of testing its quality and determining whether the vendors would be able to make its quality conform to the obligations of their contract. It is also evident from the findings that this effort was an unqualified failure.

"It is contended by the plaintiff that there was no warranty of the quality of the coal sold, and that, by its acceptance, the defendant has precluded itself from claiming damages for a breach of contract.

"A satisfactory answer to this claim appears in the fact that it is not found or shown that the defects in the coal were visible on inspection; but, on the contrary, it negatively appears from the conduct of both the vendors and vendee that they were not discernable on inspection. A further answer to this point is found in the proposition that the evidence authorized the finding that there was a warranty as to the quality of the coal sold.

"The contract in this case calls for Powelton coal of the 'same quality and kind as furnished' by the vendors to the defendant the preceding year. It calls for coal of a particular quality and kind, determinable by a standard which was equally well-known and understood, both by the vendors and the purchaser. While the term 'Powelton coal' may be said to be a descriptive term, merely; when it is said that the coal was to be Powelton coal of the same quality and kind as that delivered in the previous year, it goes beyond mere words of description, and refers to the intrinsic value of the goods sold in language which cannot be misunderstood, and can be satisfied only by a consideration of its fitness to perform the work required of it in the defendant's business. That this was the theory of the vendors while the coal was being delivered, is quite evident from their request that it should not be prematurely judged by its appearance alone, but should be determined by positive trial and the results shown by actual use and experiment. It comes, therefore, with ill-grace from the vendors now to insist that the defects in the coal were so perceptible on inspection that the defendant should be barred by its acceptance, when they themselves had induced that acceptance only by the assurance that the working quality of the coal would show that the defects visible on inspection were apparent and not real.

"We are, however, of the opinion that, upon the evidence, the contract contained a warranty of quality which survived the acceptance of the goods. The principle is well established that, upon an executory sale of goods by sample, with warranty that the goods shall correspond with the sample, the vendee is not precluded from claiming and recovering damages for breach of warranty, although he has accepted the goods after an opportunity for inspection. (*Kent* v. *Friedman,* 101 N. Y. 616; *Brigg.* v. *Hilton,* 99 id. 517; *Gurney* v. *Atlantic & Great Western R. Co.,* 58 id. 358.)

"We are, also, of the opinion that the sale in question was, practically, a sale by sample. Although the standard selected for comparison was not present, or in existence, even, at the

time of the sale, its qualities had been observed and demonstrated, and were capable of exact ascertainment by the evidence of those who had witnessed the results produced by the consumption of the coal. It was unnecessary for the purpose of effecting a comparison of the respective qualities of the two specimens of coal that they should be present and compared side by side, or tested at the same time. The capacity of coal for generating heat and steam determines its value, and it is only by the destruction of the subject that a standard can be created for comparison. The comparison does not depend upon considerations of external correspondence and appearance, and this was obviously the view which these parties took of the question while negotiating as to the continuance of the deliveries of coal under this contract.

" The standard selected for testing the quality of the goods sold was considered sufficiently definite and precise by the parties to the contract, and it does not appear that there was any difficulty in practice in applying it to the subject.

" A contract of sale which points out a known and ascertainable standard by which to judge the quality of goods sold, is, for all practical purposes, a sale by sample, and renders the vendor liable for damages upon a breach of warranty, although there has been an acceptance after opportunity to inspect the goods. The cases of Coplay Iron Co. v. Pope (108 N. Y. 232); Studer v. Bleistein (115 id. 316); Pierson v. Crooks (Id. 539), and other cases of like character are clearly distinguishable, inasmuch as one is a contract concerning a sale by sample and the others were executory contracts for the manufacture and sale or delivery of goods of a particular description. In cases of the latter character, where the quality of goods is capable of discovery upon inspection, and where, after full opportunity for such inspection, the goods are accepted and no warranty attends the sale, the vendee is precluded from recovering damages for any variation between the goods delivered and those described in the contract.

" It is also contended by the appellant that the defendant could not counter-claim the damages arising out of the inferior

quality of the coal against the price of the coal delivered by Powell & Co.'s assignee.

" There was no new contract made between the defendant and Powell & Co.'s assignee, and the coal delivered by such assignee was evidently delivered in performance of Powell & Co.'s contract. It was probably supposed by the assignee that through the performance of Powell & Co.'s contract it might realize a larger sum from the assigned property than it otherwise could. It thus, without supposing any special arrangement necessary, continued supplying coal to the defendant. The coal, however, was of the same inferior quality as that previously delivered by Powell & Co., and the defendant finally, after the delivery of an inconsiderable quantity by the assignee, refused absolutely to receive any more. The assignee, however, had an absolute right to perform Powell & Co.'s contract, although under no legal obligation to do so. He chose to attempt its performance and the defendant had no power or right to prevent it. It, therefore, received all the coal delivered in performance of that contract, relying upon its contract for indemnity against loss on account of its inferior quality. While the defendant was under no legal obligation to receive inferior coal from the assignee, it yet had a right to receive it conditionally and apply it upon the obligations of the contract.

" It cannot be that either the assignee or the defendant had any other idea with reference to the delivery of coal by the assignee than to fulfill the contract which the assignee had secured by assignment from Powell & Co."

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.