GUSTAVUS A. WAEBER et al., Appellants, v. GABRIEL TALBOT et al., Respondents.

1. SALE — WHEN QUALITY OF GOODS A PART OF THE CONTRACT. No implied warranty of the quality of canned peas arises from the sale thereof to importers of that class of goods, by a description which is known to the trade as referring to the highest grade packed by the vendors and the quality of which is ascertainable by the inspection of one or more cans in every hundred, which inspection it is the custom of the trade to make, but such terms are merely part of the contract descriptive of the article sold.

2. IMPLIED WARRANTY. Assuming that there was an implied warranty of the merchantability of the peas it would not survive their acceptance, where there is a mode of inspection well known to the trade in which the purchasers are engaged, and which it was the custom of the trade to make, by which imperfections in the peas or the liquid in which they are preserved are readily discoverable.

3. RESCISSION. A contract for the sale of canned peas of a certain quality cannot be rescinded and the goods returned. where the purchasers were advised of defects in their quality within ten days after their receipt but continued to handle them until several months thereafter before offering to return them.

*Waeber* v. *Talbot*, 43 App. Div. 180, affirmed.

(Argued March 20, 1901; decided April 30, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 5, 1899, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court after the submission of specified questions to the jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*F. De Lysle Smith* for appellants. Both an express and an implied warranty are provable under the complaint as it originally stood and as it was amended. (*Hoe* v. *Sanborn*, 21 N. Y. 552; *Bierman* v. *City Mills Co.*, 151 N. Y. 482; *Reynolds* v. *Mayor, Lane & Co.*, 39 App. Div. 218; *Almond* v. *Hart*, 46 App. Div. 431; *Prentice* v. *Fargo*, 53 App. Div. 608.) The peas described in the contract sued upon, being *in esse*, having been packed in the spring of 1893, and being part of

defendant's entire pack of 1893 peas purchased by the plaintiffs and being definitely described as to kind, quality and size, with amount and price specifically designated, and nothing remaining to be done by the vendors to ascertain the property sold, said contract is executed and title to the peas passed to vendee upon the signing of same. (21 Am. & Eng. Ency. of Law [1st ed.], 482, 483; *Kimberly* v. *Patchin,* 19 N. Y. 330, 332; *Crofoot* v. *Bennett,* 2 N. Y. 258; *McNamara* v. *Edmister,* 11 Hun, 597; *Terry* v. *Wheeler,* 25 N. Y. 520, 521; *Brigg* v. *Hilton,* 99 N. Y. 517, 529; *Russell* v. *Carrington,* 42 N. Y. 118; *Burrows* v. *Whitaker,* 71 N. Y. 291, 295–297.) The contract and sale being executed, the words of description therein were an express warranty from the vendors to the vendee Lea that the peas so purchased were of the kind, size and quality, including tenderness, flavor and color, corresponding to said description, as understood and known in the trade, and that they were merchantable as peas of that description. (*White* v. *Miller,* 71 N. Y. 118; *Hawkins* v. *Pemberton,* 51 N. Y. 198; *Bradford* v. *Manly,* 13 Mass. 144; *Henshaw* v. *Robins,* 9 Metc. 83; *Dounce* v. *Dow,* 64 N. Y. 412; *Gurney* v. *A. & G. W. Ry. Co.,* 58 N. Y. 358; *F. C. Co.* v. *Metzger,* 118 N. Y. 260; *Van Wyck* v. *Allen,* 69 N. Y. 61; *Hastings* v. *Lovering,* 2 Pick. 214; *Cramer* v. *Bradshaw,* 10 Johns. 484.) The warranty being express, it survived the acceptance and use of said peas by the plaintiffs, and the defendants are liable on said express warranties for any breach thereof, and that without the return or offer to return said peas. (*Muller* v. *Eno,* 14 N. Y. 597; *Brigg* v. *Hilton,* 99 N. Y. 517; *Foot* v. *Bentley,* 44 N. Y. 166; *White* v. *Miller,* 71 N. Y. 118; *Gurney* v. *A. & G. W. Ry. Co.,* 58 N. Y. 358; *Day* v. *Pool,* 52 N. Y. 416.) The defendants, being the manufacturers and sellers, impliedly warranted the peas to be of the kind, quality and size mentioned and described in the contract as known and recognized in the trade and merchantable as peas of said description, and free from latent defects due to improper selection of stock and improper processing and canning. (*Hoe* v. *Sanborn,* 21 N.

7

Y. 561 ; *Carleton* v. *Lombard, Ayres & Co.,* 149 N. Y. 137 ;
*K. B. Co.* v. *Hamilton,* 110 U. S. 108 ; *F. C. Co.* v. *Metzger,*
118 N. Y. 260 ; *Bierman* v. *City Mills Co.,* 151 N. Y. 482 ;
*White* v. *Miller,* 71 N. Y. 118 ; *Reynolds* v. *Mayor, Lane &
Co.,* 39 App. Div. 218 ; *A. F. P. M. Co.* v. *Brady,* 4 App.
Div. 95 ; *Howard* v. *Hoey,* 23 Wend. 350 ; *Newberry* v. *Wall,*
35 N. Y. Supp. 106.) The said implied warranties survived
acceptance, and return of the peas or offer to return was
unnecessary. (*Muller* v. *Eno,* 14 N. Y. 601 ; 28 Am. & Eng.
Ency. of Law, 833 ; *Bierman* v. *City Mills Co.,* 151 N. Y.
482 ; *Carleton* v. *Lombard, Ayres & Co.,* 149 N. Y. 137.)
Even if the warranty did not survive acceptance, and an offer
to return was necessary before bringing suit, this requirement
was met by an offer to return and refusal to accept such offer
by the defendants. (*Pierson* v. *Crooks,* 115 N. Y. 539.)

*Robert C. Taylor* for respondents. The contract was execu-
tory. (*Shields* v. *Pettie,* 4 N. Y. 124 ; *C. I. Co.* v. *Pope,*
108 N. Y. 232 ; *Wilson* v. *E. D. S. Co.,* 50 App. Div. 114 ;
*P. I. Works* v. *L. I. R. R. Co.,* 62 N. Y. 272 ; *Krulder* v.
*Ellison,* 47 N. Y. 36.) The goods answered the description
in the contract. The plaintiff retained them with full knowl-
edge of their quality, and there was no rejection or offer to
return them. (*Mason* v. *Smith,* 130 N. Y. 474 ; *Cafre* v.
*Lockwood,* 22 App. Div. 11 ; *Reed* v. *Randall,* 29 N. Y. 363 ;
*Wallace* v. *Blake,* 22 N. Y. S. R. 259 ; *Carr* v. *Sullivan,* 68
Hun, 246 ; *Rust* v. *Eckler,* 41 N. Y. 488 ; *McCormick* v.
*Sarson,* 45 N. Y. 265.) The plaintiffs, having retained the
peas after acquiring full knowledge of their quality, are con-
clusively presumed to have acquiesced in that quality. (*Reed*
v. *Randall,* 29 N. Y. 358 ; *Hargous* v. *Stone,* 5 N. Y. 73 ;
*Dutchess County* v. *Harding,* 49 N. Y. 323 ; *G. Mfg. Co.* v.
*Allen,* 53 N. Y. 515 ; *C. I. Co.* v. *Pope,* 108 N. Y. 232 ; *F.
C. Co.* v. *Metzger,* 118 N. Y. 264.)

BARTLETT, J. The plaintiffs were copartners doing a gen-
eral commission and importing business in foreign and domes-
tic canned goods, etc., in the city of New York, and the

defendants as partners were carrying on a general packing and export business in fruits, nuts, vegetables, etc., in the city of Bordeaux, France, in the name of Talbot Freres.

This action was brought to recover damages for the alleged breach of an express warranty on two hundred and seventy-one cases of "Talbot Extra Fine Peas, Sieve 23–24," purchased by Walter Lea, one of the plaintiffs, from the defendants. Walter Lea had, prior to entering plaintiffs' firm, purchased from the defendants certain canned peas in cases which they had failed to deliver as per contract; he brought an action against them for damages, which was settled and resulted in a stipulation wherein the defendants agreed to deliver to Lea, on the dock in the city of New York, among other goods, three hundred and thirty-five cases of Talbot peas of a certain description to be contained in decorated tins of the crop of the year 1893. This stipulation was afterwards assigned by Lea to the plaintiffs' firm, and the goods therein called for were delivered about the first day of December, 1893, on the dock in the city of New York.

The contest in this case is over two hundred and seventy-one of the three hundred and thirty-five cases therein referred to.

This action was originally brought upon an express warranty relating to this shipment of goods of Talbot Extra Fine Peas, Sieve 23–24, 183 cases at $19 a case and 152 cases at $22 a case, which it is alleged were sold "to arrive."

On the fifth day of the trial, it having become apparent that no express warranty could be established, the complaint was amended by inserting an allegation that the defendants represented the peas to be merchantable.

The trial proceeded for three days more, and at the close of the evidence the defendants moved to dismiss the complaint on various grounds.

The learned trial judge suspended his ruling on this motion until he had submitted to the jury two questions for them to answer specifically:

1. Whether the 271 cases of peas were merchantable as "Talbot Extra Fine Peas, Sieve 23–24, in decorated tins and of the crop of 1893?"

To this question the jury answered, "No."

2. What damage did the plaintiffs sustain through the unmerchantability of the said peas?

The jury fixed the damages at $1,178.85. Thereupon the trial judge granted the motion to dismiss the complaint, stating in substance that there was no warranty which survived the acceptance of the goods, and that the defendants, by retaining the goods for an unreasonable time, waived their action for damages.

The trial judge further stated that he had required the jury to answer the questions for the purpose of getting into the record facts that would enable the court on appeal to render judgment for the plaintiffs in the event it did not approve the dismissal of the complaint.

The Appellate Division affirmed the judgment of the Trial Term without dissent.

It is very clear, as held by the courts below, that this was an executory contract without express warranty.

The issue presented for trial was a simple one, and rested very largely on undisputed evidence. There is no proof that any express warranty or representations were made at the time of the sale.

The goods were generally described as "Talbot Extra Fine Peas, Sieve 23–24."

The legal effect of this description lies at the foundation of the case.

It was proved that in the packing factories of France the peas are passed through a revolving sieve containing meshes of different dimensions, and the result is that the product is divided into lots of various sizes.

The smallest size is involved in this action and is the most valuable. It is undisputed that the defendants' firm enjoyed a high reputation in the trade, with factories at Bordeaux, France. It is further established, as might have been claimed by plaintiffs on dismissal of complaint, that the description "Talbot Extra Fine Peas, Sieve 23–24," refers to the highest grade of goods packed by the defendants, being selected, small tender peas.

These goods, sold "to arrive," were grown in 1893, and it may fairly be inferred from the evidence that this crop suffered seriously from a severe drouth which prevailed that season in and about Bordeaux.

The peas were placed in tins hermetically sealed, and one hundred of these were packed in each wooden case.

It was proved to have been the custom of the trade to examine goods packed in this manner by opening one or more tins in each case, and if this inspection was unsatisfactory, the peas were rejected.

The examination of each tin in an entire shipment was impossible, as the opening thereof was destructive of its contents.

The defendants delivered these goods about December 1st, 1893, and the plaintiffs learned of the defect in quality some ten days later, but continued to handle and sell them for such prices as they could obtain until some time in the following May, when they offered to return the peas on hand and buy two cases for every one so paid for by defendants.

The Appellate Division regarded this offer as not made in time and as conditional.

This action was begun June 1st, 1894.

We come then to consider the controlling question in this case as to the legal effect of the general description contained in the stipulation entered into by the plaintiff Lea and the defendants in settling the original action, to which reference has been made.

The defendants agreed to deliver on the dock in the city of New York a certain number of cases of "Talbot Extra Fine Peas, Sieve 23–24."

This description was well understood between the parties, who were experts in the business, and the quality of the goods called for was not an express or implied warranty, but a part of the contract of sale. The defendants were bound to deliver the quality of goods called for by the contract, which was the highest grade they packed, and, if an inferior article was shipped, the plaintiffs had a reasonable time for inspection, rescission and offer to return.

This action does not fall within that class of cases where a dealer sells an article, describing it by a name of commerce, the identity of which is not known to the purchaser and which he cannot ascertain by inspection, and where a warranty is, therefore, implied that the article sold is that described. This class of cases is well illustrated by two leading authorities:

*Van Wyck* v. *Allen* (69 N. Y. 61) involved the sale of cabbage seed known as "Van Wycklin's flat Dutch, raised at New Lots, Long Island."

Judge FOLGER said (page 64): "It is substantially conceded that the article sold, though seed, and in likeness of that kind of cabbage seed, were in fact totally unproductive of cabbage.' This was a situation where inspection by the purchaser afforded him no protection, as the defect in the seed was latent and beyond discovery.

*White* v. *Miller* (71 N. Y. 118) involved the sale of "Bristol cabbage seed." It was found that cabbages raised from this seed were, in the main, not of the Bristol variety and were of no value, except as food for cattle.

In this case, as in the one last cited, the purchaser could not depend upon inspection, and the law properly holds the seller in such a situation to the implied warranty that the thing delivered is that described in the contract of sale.

The case at bar is not affected by the judicial discussion which has modified to some extent *Seixas* v. *Woods* (2 Caines, 48) and *Sweet* v. *Colgate* (20 Johns. 196), and within certain limitations established the rule that the sale of a chattel particularly described imports a contract or warranty that the article sold is of that description. The case of *Hawkins* v. *Pemberton* (51 N. Y. 198) is cited as a leading one on this point. At page 205 Judge EARL says: "Here there was a positive representation that the article sold was blue vitriol; the plaintiff meant the purchasers to understand that it was blue vitriol and he sold it as such. The defendant relied upon the representation, believing it to be blue vitriol, and bought it as such. If upon these facts the court was not authorized to hold as matter of law that there was a warranty, it was at least bound to submit the question of warranty to the jury."

This case went off on the point that the representations amounted to a warranty, or could be so found by the jury; this is all that was decided.  The case of *Dounce* v. *Dow* (64 N. Y. 411) is also cited.  The defendant ordered of plaintiff iron known as "XX pipe iron" to be used in manufacture of farming implements which required soft, tough iron.  It proved to be brittle and unfit.  The court held that the plaintiff warranted the character of the iron as "XX pipe iron," but not any certain quality of that brand.  If defendant desired this he should have exacted an express warranty.

It was further held that if a warranty that the iron was merchantable could be implied, the defendant, by using a large portion of it after an opportunity to examine and ascertain the quality, must be deemed to have accepted it and waived the warranty.  The facts in this case clearly distinguish it from the case at bar.

In the case cited the words "pipe iron" referred to the furnace where manufactured, and "XX" to the brand, indicating the quality.  All that the implied warranty covered was iron of this make and brand, but not as to any certain quality of the brand.

In the case before us we have experts in the same business, meeting on an equal footing, the one agreeing to sell and the other to purchase a certain brand of goods, not then in existence, as the pea crop was at that time, March, 1893, in the ground.  The seller and the buyer had been familiar with this brand of goods for years.

The quantity and brand of goods, judged by external appearances, were delivered according to the contract, which required them to be of a precise and definite quality.

Inspection alone could determine whether the defendants had performed their contract.  The plaintiffs within ten days after receiving the goods were advised that there was trouble as to their quality.

It then became their duty to act with reasonable promptness, inspect the entire consignment in the manner allowed by the custom of the trade, and if it proved unsatisfactory to rescind the contract and offer to return the goods.

In *Carleton* v. *Lombard, Ayres & Co.* (149 N. Y. 137), when this point of quality of goods being a part of the contract was under discussion, attention was called by Judge O'BRIEN to the fact that the sale of a particular thing by terms of description has been treated as a warranty in many modern cases, but that there are numerous authorities in which such words of description (p. 147) "are not considered as a warranty at all; but conditions precedent to any obligation on the part of the vendee, since the existence of the qualities indicated by the descriptive words, being part of the description of the thing sold, become essential to its identity, and the vendee cannot be obliged to receive and pay for a thing different from that for which he contracted. (Smith's Leading Cases [6th Eng. ed.], 27; 2 Schouler's Personal Property pp. 352, 353.) The tendency of the recent decisions in this court is to treat such words as part of the contract of sale descriptive of the article sold and to be delivered in the future, and not as constituting that collateral obligation which sometimes accompanies a contract of sale and known as a warranty. (*Reed* v. *Randall*, 29 N. Y. 358; *Coplay Iron Co.* v. *Pope*, 108 N. Y. 232, 236.)"

The point under discussion was considered long since in England. Mr. Benjamin in his work on Sales (7th edition), at section 600, says: "When the vendor sells an article by a particular description, it is a condition precedent to his right of action that the thing which he offers to deliver, or has delivered, should answer the description. Lord ABINGER protested against the confusion which arises from the prevalent habit of treating such cases as a warranty, saying: 'A good deal of confusion has arisen in many of the cases upon this subject from the unfortunate use made of the word 'warranty.' Two things have been confounded together. A warranty is an express or implied statement of something which a party undertakes shall be a part of a contract, and though part of the contract collateral to the express object of it; but in many of the cases the circumstance of a party selling a particular thing by its proper description has been called a warranty, and the breach of such a contract a breach

of warranty ; but it would be better to distinguish such cases as a non-compliance with a contract which a party has engaged to fulfill, etc.' (*Chanter* v. *Hopkins*, 4 M. & W. 399.) " Mr. Benjamin, after quoting as above, says : " There can be no doubt of the correctness of the distinction here pointed out. If the sale is of a described article, the tender of an article answering the description is a condition precedent to the purchaser's liability ; and if this condition be not performed the purchaser is entitled to reject the article, or, if he has paid for it, to recover the price as money had and received for his use."

Treating the general description in the case before us as a part of the contract of sale, the plaintiffs were abundantly protected, and if they failed to inspect, rescind and return the goods it is because they neglected to avail themselves of the remedies which the law afforded them.

In cases of executory contracts for the sale and delivery of personal property, the remedy of the vendee to recover damages on the ground that the article furnished fails to correspond with the contract, does not survive the acceptance of the property by the vendee after opportunity to ascertain the defect. (*Reed* v. *Randall*, 29 N. Y. 358 ; *McCormick* v. *Sarson*, 45 N. Y. 265 ; *Beck* v. *Sheldon*, 48 N. Y. at page 373 ; *Dutchess Co.* v. *Harding*, 49 N. Y. 321 ; *Gaylord Mfg. Co.* v. *Allen*, 53 N. Y. 515 ; *Coplay Iron Co.* v. *Pope*, 108 N. Y. 232 ; *Mason* v. *Smith*, 130 N. Y. 474.)

The learned counsel for the appellants argues that, assuming there was no express warranty, his clients are protected by the implied warranty which arises in the case of the manufacturer of goods.

It is claimed the person who cans fruit and vegetables for the market, buying the same from various growers, stands in the position of a manufacturer of goods when he sells those products to the jobber.

Assuming, without deciding this point in favor of the appellants, it is enough to say that this court has held that the manufacturer's implied warranty of merchantability only

survives the acceptance of the goods if the latent defects were not discoverable upon inspection. (*Bierman* v. *City Mills Co.*, 151 N. Y. 482.)

In the case at bar, as already pointed out, there was a mode of inspection well known to the trade, under which any imperfection of the peas, or the liquid in which they were preserved, was readily discoverable.

An inspection of two or three samples in each case of a hundred tins warranted the rejection of the entire case.

These goods were delivered by the defendants December 1, 1893, and the plaintiffs were advised of the defect in their quality ten days later.

The offer by the plaintiffs to return such goods as they had on hand in the following May, on the eve of bringing this action, was not in time, even assuming without deciding that the offer was unconditional. The cases cited, and numerous others, to which reference might be made, hold that the right to rescind a contract, where goods are not as agreed, must be exercised promptly and in good faith.

The views we have expressed render it unnecessary to examine the appellants' exceptions.

The judgment of the Appellate Division should be affirmed, with costs.

PARKER, Ch. J., GRAY, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Judgment affirmed.