(75 App. Div. 380.)

### BULL et al. v. BATH IRON WORKS.

(Supreme Court, Appellate Division, Second Department.   October 17, 1902.)

**1. SALE—WARRANTY—BREACH—ACTION AFTER ACCEPTANCE.**

A stipulation in a contract for the manufacture and delivery of a steamship that the ship should have "a speed in smooth water of 10 knots when loaded to a draft of 18 feet 9 inches" is a collateral warranty, independent of the contract to manufacture and deliver, which survives the acceptance of the ship, so that the buyer may thereafter maintain an action for a breach thereof.

**2. SAME—MEASURE OF DAMAGES.**

In an action for the breach of a stipulation in a contract for the manufacture and delivery of a steamship, that she should have a designated speed, the measure of damages is the difference between the market value of the ship as she is and as she was warranted to be.

**3. SAME—EVIDENCE.**

In an action for the breach of a warranty in a contract for the manufacture and delivery of a steamship, that she should have a designated speed, evidence of plaintiff's inability to obtain charters for her, where no proof is made that the inability was because of the ship's lack of speed, is inadmissible; the evidence raising separate issues, and being of such a character that defendant could not reasonably be expected to meet it.

**4. SAME.**

Evidence that a charterer of the ship for a period of six months canceled the charter at the end of two months because she did not develop the speed which plaintiff guarantied, where no proof is made that the guarantied speed did not exceed 10 knots an hour, is inadmissible, as permitting the jury to speculate on items of special damages not pleaded, nor having a place in the determination of the controversy.

**5. SAME—NEW TRIAL—EXCESSIVE DAMAGES—ADMISSION OR REJECTION OF EVIDENCE.**

Where the verdict of the jury in an action for the breach of a warranty in a contract for the manufacture and delivery of a ship is so large as to border on what is an excessive amount, a new trial will be granted for errors in the admission or rejection of evidence on the question of damages.

Appeal from trial term, Kings county.

Action by Archibald H. Bull and others against the Bath Iron Works. From a judgment for plaintiffs, and from an order denying a motion for a new trial on the minutes, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

H. G. Ward (Everett Masten, on the brief), for appellant.

J. Parker Kirlin (James T. Kilbreth, on the brief), for respondents.

HIRSCHBERG, J. The plaintiffs have recovered judgment for damages for breach of warranty in the speed of a steel steamship, known as the "Winifred," constructed for them by the defendant under a written contract. The contract provided that the defendant agreed with the plaintiffs, the firm of Miller, Bull & Knowlton, for themselves and as agents for others, "to furnish all materials and build in a thorough and workmanlike manner one steel steamer, having a speed in smooth water of 10 knots when loaded to a draft

of 18 feet 9 inches, to have a capacity of 175,000 cubic feet, and about 3,800 tons dead-weight capacity on a draft of between 18 feet 9 inches and 19 feet 3 inches." The contract contained no provision for a speed test, and none was made at the stipulated load; but when the vessel was completed it was delivered to the plaintiffs, and accepted and paid for by them, without knowledge on their part or on the part of the defendant whether it was capable of maintaining a speed of 10 knots in smooth water at a draft of 18 feet 9 inches. The vessel has ever since been in the plaintiffs' charge and possession, but it was fully established upon the trial that she was not at the time of completion and delivery, or at any time subsequent, capable of making substantially the speed referred to under the conditions named.

Although I have reached the conclusion that there must be a new trial because of errors in ruling, I deem it important that the main question of law presented on the appeal should be determined. The appellant contends that the words relating to the speed of the vessel are merely descriptive of the article to be manufactured, and that therefore a failure in that regard is merely a failure to deliver the article contracted for, which must be discovered at the time of delivery, and the article rejected, or all claim for damages will be lost; while the respondents contend that the words embody a collateral warranty, independent of the contract to construct and deliver the steamer, and that the engagement therefor survives acceptance, so that damages may thereafter be recovered for the breach. The decisions in this state are not all consistent or harmonious, but I think the weight is with the contention of the respondents.

In the case of Reed v. Randall, 29 N. Y. 358, 86 Am. Dec. 305, cited by the appellant, the contract was to deliver a crop of tobacco, well cured and in good condition; and the court held that this was the sale of a particular thing by its proper description, merely, and that the descriptive words used for defining the thing agreed to be sold were of the substance of the contract, and not collateral to the main object of it. This case was distinguished in the subsequent decision of Parks v. Tool Co., 54 N. Y. 586, and the rule was laid down, which has never since been departed from in this state, however courts may have varied in applying it to differing facts, that, to quote the headnote:

"An executory contract for the sale of personal property may be with warranty, and where the warranty is as to its intrinsic quality, which mere observation and inspection will not determine, upon receipt and subsequent discovery of a breach the vendee can recover upon the warranty. He is not bound to release or offer to return the property. A return, or its equivalent offer, is only necessary where a rescission of the contract is sought. It is neither necessary nor admissible where a warranty, simply, is relied upon."

In that case the warranty related to the character of certain steel, which was to be "equal in quality to any brand of English steel." The court said (page 590):

"Obviously, mere inspection could not determine whether the steel delivered was the best cast steel, and equal in quality to any English brand. In order, therefore, to any substantial protection of its rights, the defendant was compelled to rely upon the warranty. * * * The case of Reed v. Randall,

29 N. Y. 358, 86 Am. Dec. 305, is not inconsistent with this view. All it decides is that in an executory contract words of description are to be regarded as merely defining the thing sold and to be delivered, and as imposing conditions on the seller, which the buyer must see have been fulfilled before complete acceptance. * * * But that case does not deny that a warranty may accompany an executory contract, and may be enforced as such, and where the warranty relates not to the external character of the article sold, but to its intrinsic quality, not the subject of the direct and immediate observation of the senses, it is essential to the protection of the rights of the party purchasing that the contract should have effect as a warranty."

In Canning Co. v. Metzger, 118 N. Y. 260, 23 N. E. 372, 16 Am. St. Rep. 753, the contract was for the delivery of dressed beef not heated before being killed. The court said (page 264, 118 N. Y., page 373, 23 N. E., 16 Am. St. Rep. 753):

"In the absence of a warranty as to quality and a breach, the defendant's claim for damages could not have survived the use of the property. For in such case venders are bound to rescind the contract and return, or offer to return, the goods. If they omit to do so, they will be conclusively presumed to have acquiesced in their quality. Iron Co. v. Pope, 108 N. Y. 232, 15 N. E. 335. * * * 'A warranty is an express or implied statement of something which a party undertakes shall be a part of a contract, and, though part of the contract, collateral to the express object of it.' 2 Schouler, Pers. Prop. 327. All contracts of sale with warranty, therefore, must contain two independent stipulations: First, an agreement for the transfer of title and possession from the vendor to the vendee; second, a further agreement that the subject of the sale has certain qualities and conditions. It is not necessary that in the collateral agreement the word 'warranty' should be used. No particular phraseology is requisite to constitute a warranty. 'It must be a representation which the vendee relies on, and which is understood by the parties as an absolute assertion, and not the expression of an opinion.' Society v. Lawrence, 4 Cow. 440. It is not necessary that the vendor should have intended the representation to constitute a warranty. If the writing contains that which amounts to a warranty, the vendor will not be permitted to say that he did not intend what his language clearly and explicitly declares. Hawkins v. Pemberton, 51 N. Y. 198, 10 Am. Rep. 595. * * * Now, in the case before us, the defendants undertook to purchase of the plaintiff fresh dressed beef, to be wholesaled in part, and the residue retailed to their customers. * * * Not only did they contract for beef that was clean, well dressed, in first class condition in every respect, and merchantable, and that was thoroughly chilled before being loaded on the cars, but, further, that they should not be given beef that had been heated before being killed. When, therefore, the plaintiff placed in a suitable car beef well dressed and clean, and of the general description given in defendants' order, it had made a delivery of the merchandise sold, and, by the terms of the contract, was entitled to be paid as soon as the bill should reach defendants, and before the arrival of the beef made an examination by the defendants possible. But there was another collateral engagement, and yet forming a part of the contract, which the plaintiff had not performed. * * * It was of such a character that defendants were obliged to rely solely upon the representation of the plaintiff in respect thereto. The plaintiff or its agents selected from their stock the cattle to be slaughtered. No one else knew or could know whether they were heated and feverish. Inspection immediately after placing the beef in the car would not determine it. That collateral engagement consisted of a representation and agreement that plaintiff would deliver to defendants beef from cattle that had not been heated before being slaughtered. Such representation and agreement amounted to an express warranty."

I have quoted extensively from these two cases because they seem decisive of the question under consideration. The precise thing which the defendant here agreed to manufacture and deliver was a steel

steamer, which, in size, capacity, material, and construction, should conform to the specifications. Whether or not she did so conform when completed was a matter which could be easily determined by observation, measurement, and inspection, and by the terms of the contract the plaintiffs were then required to take and pay for the vessel. But there was a separate engagement with respect to her speed when loaded, which, while an important part of the contract, was one the fulfillment. of which could only be determined by actual use, and which the parties must therefore have contemplated should survive the mere acceptance of the vessel as an article which in its physical construction visibly followed the description of the contract. The appellant cites the case of Improvement Co. v. Roach, 117 N. Y. 527, 23 N. E. 168, where the agreement was to build a steamship to carry "dead weight of one thousand two hundred and fifty tons freight and coal on thirteen and one-half feet draft," and wherein it was held that such a provision was not a collateral warranty as to the quality or condition of the ship, but a part of the description of the thing to be made and delivered under the contract. But manifestly there is an essential difference between the capacity and the speed of a ship. The one is determined by the precise specifications of the contract, the other by the builder's knowledge of what the specified materials will accomplish in achievement; the one is extrinsic, the other intrinsic; the one physical, a matter of size, the other ideal, a matter of performance; the one relates to what the object constructed is, the other to what it can do; the one is therefore a mere description, the other a promise, an assurance,—a warranty. This general difference is recognized in many of the authorities, and distinguishes words of description of the article to be sold or manufactured from those which carry an assurance of quality or power which the vendor or maker undertakes shall accompany and be a part of it. For further illustration of the principle involved, see Freeman v. Baker, 5 Car. & P. 475; Milburn v. Belloni, 39 N. Y. 53, 100 Am. Dec. 403; Hawkins v. Pemberton, 51 N. Y. 198, 10 Am. Rep. 595; Day v. Poole, 52 N. Y. 416, 11 Am. Rep. 719; Gurney v. Railway Co., 58 N. Y. 358; Dounce v. Dow, 64 N. Y. 411; White v. Miller, 71 N. Y. 118, 27 Am. Rep. 13; Kent v. Friedman, 101 N. Y. 616, 3 N. E. 905; Swayne v. Schieffelin, 134 N. Y. 471, 31 N. E. 1025, 18 L. R. A. 385.

The cases on which the appellant relies, other than those already considered, are distinguishable. In Manufacturing Co. v. Allen, 53 N. Y. 515, the court found that the evidence clearly showed (page 519) "that the quality of the castings was patent, and easily to be discerned upon inspection and attempt to use them, and that the defendant had full opportunity to, and did, examine them and know their quality." In Iron Co. v. Pope, 108 N. Y. 232, 15 N. E. 335, it was held that an agreement to deliver No. 1 extra foundry pig iron, of the Coplay Iron Company, Limited, make, involved no collateral warranty or agreement as to quality, but related only to a sale of property by its name. Studer v. Bleistein, 115 N. Y. 316, 22 N. E. 243, 5 L. R. A. 702, related to the detail, general design, and effect of lithographic plates to be furnished; and it was held that a

deliberate and intentional acceptance by the vendee after full inspection estopped him from claiming damages for visible and discernible defects, in the absence of a warranty of quality intended to survive acceptance. The same principle controlled the decisions in Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831, and Mason v. Smith, 130 N. Y. 474, 29 N. E. 749. In Chambers v. Lancaster, 160 N. Y. 342, 54 N. E. 707, the question does not appear to have been presented or considered; the decision resting upon a finding that there was an election by the vendee to accept, with full knowledge of the imperfections. And Waeber v. Talbot, 167 N. Y. 48, 60 N. E. 288, was a case of implied warranty, which was held not to survive acceptance where there was a well-known mode of inspection of the goods which it was the custom of the trade to make.

The conclusion reached, therefore, is that in this case the words in question import a warranty. But as I have said, there were unfortunately some errors in the ruling. The measure of damages was the difference between the market value of the steamship as she was and as she was warranted to be. Slocovich v. Insurance Co., 108 N. Y. 56, 14 N. E. 802; Hooper v. Story, 155 N. Y. 171, 49 N. E. 773. Whether experts on the question of value may be permitted to give on their examination in chief the reasons and bases of their estimates, and the extent to which such an inquiry may be pursued, does not appear to be definitely and authoritatively settled in this state. Conceding, however, that it was proper to permit proof in the first instance that a vessel of the Winifred's size and speed could not procure the most profitable form of employment, known as "time charters," and that such proof was competent as bearing on the question of market value, it was certainly improper to allow substantive proof of actual inability on the plaintiffs' part to obtain time charters. The plaintiffs were allowed to prove generally that they were unable to obtain time charters for the vessel, but no proof was made in that connection that such failure was because of lack of speed in the vessel. Aside from the fact that the defendant could not be reasonably expected to meet proof of this character, the evidence is open to the objections stated in Blanchard v. Steamboat Co., 59 N. Y. 292, and in Re Thompson, 127 N. Y. 463, 468, 29 N. E. 150, that it makes in each instance a separate issue, distinct from the main issue, and involves a comparison with the value of other vessels which are not the subject of the immediate inquiry. It was also error to allow the plaintiffs to prove as a fact that a charter made by them with the New York & Porto Rico Steamship Company for a period of six months was broken by the latter at the end of two months because the vessel did not develop the speed which the plaintiffs guarantied. There was no proof as to the speed guarantied, or that it was not in excess of 10 knots an hour. The law limits the plaintiffs' damages to the actual difference in market value as stated, and the jury should not be permitted to speculate, as they may have done in spite of the careful charge of the learned trial justice, upon items of additional special damage not pleaded, and not having any pertinent place in the lawful determination of the controversy. The

vessel was built by the plaintiffs and the defendant on shares, and at actual cost; a sharp rise in values followed its delivery, owing to the Spanish-American war; the steamship has been in constant use by the plaintiffs in trade and commerce; and the verdict,. if not excessive, is certainly very large. Under such circumstances, the court may very well apply the rule lately enforced in the first department in McIlwaine v. Railroad Co., 74 App. Div. 496, 77 N. Y. Supp. 426, that, where the jury awards a verdict so large as to border on what would be an excessive amount, a new trial should be granted for an error in the reception or rejection of evidence relating to the question of damages, even though the erroneous ruling might be disregarded in other cases upon the ground that no substantial prejudice resulted therefrom.

The defendant is the owner of one-quarter of the boat. Inadvertently, the attention of the jury was not called to this fact upon the final submission of the case, and the verdict was probably the entire amount of the damages assessed, instead of three-quarters, as it should have been. There are other matters connected with the evidence received which are open to criticism, but as they will doubtless be corrected on a new trial, in view of the full discussion had upon the argument, a detailed consideration of them is not deemed necessary. The judgment and order should be reversed.

Judgment and order reversed and new trial granted; costs to abide the event. All concur.